# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GALILEA, LLC, | Nos. 16-35474; 16-35475 |
| Plaintiff-Appellant/Cross-Appellee, | (District of Montana Case No. 15-cv-00084-SPW) |
| v. | |
| AGCS MARINE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and TORUS NATIONAL INSURANCE COMPANY, | |
| Defendant-Appellee/Cross-Appellant. | |

## <u>THIRD BRIEF ON CROSS-APPEAL BY GALILEA, LLC</u>

Joseph J. Gleason
GLEASON LAW, LLC
780 Morosgo Drive #14084
Atlanta, Georgia 30324
Telephone: (404) 594-3550
joe@gleason.legal

Ross D. Tillman, Esq.
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-6646
Facsimile: (406) 549-6804
rtillman@boonekarlberg.com

*Attorneys for Galilea, LLC*

**Corporate Disclosure Statement**

Plaintiff-Appellant/Cross-Appellee Galilea, LLC states that it has no parent

corporation and that no publicly held corporation owns 10% or more of its stock.

**Table of Contents**

Corporate Disclosure Statement ............................................................. i

Table of Authorities ........................................................................... iii

Introduction ..................................................................................... 1

Jurisdictional Statement ...................................................................... 2

Disputed Facts and Additional Facts ..................................................... 3

Argument........................................................................................ 4

I. The Arbitration Provision is Unenforceable........................................4

    A.    Enforcing the Arbitration Provision of the Policy Would Violate Montana's Strong Public Policy................................................5

    B.    Montana's Statute is Not Preempted by the FAA ...............................6

II. The Insurers' Cross-Appeal Should Be Rejected .............................12

    A.    The District Court Correctly Found the Arbitration Agreement Narrow ..................................................................................14

    B.    The District Court Was Required to Consider Arbitrability ..............16

Conclusion .................................................................................... 23

Statement of Related Cases................................................................ 25

Certificate of Compliance ................................................................. 26

Certificate of Service ....................................................................... 27

**Table of Authorities**

## Cases

*American Bankers Ins. Co. of Florida v. Inman*,
  436 F.3d 490 (5th Cir. 2006) ..............................................................6, 8

*ASUS Compuer Int'l v. InterDigital, Inc.*,
  No. 15-CV-01716-BLF (N.D. Cal. Sep. 4, 2015)................................21

*Aviles v. Quik Pick Express, LLC*,
  No. 15-5214, 2015 WL 9810998 (C.D. Cal. Dec. 3, 2015)................18

*Basargin v. Shipowners' Mut. Protection and Indem. Ass'n (Luxembourg)*,
  1995 A.M.C. 1463 (D. Alaska Feb. 16, 1995).......................................9

*Bixler v. Next Fin. Grp., Inc.*,
  858 F. Supp. 2d 1136 (D. Mont. 2012).......................................... 10, 11

*Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)....................................................................................5

*Brennan v. Opus Bank*,
  796 F.3d 1125 (2015)..................................................... 17, 18, 19

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
  647 F.3d 914 (9th Cir. 2011) ................................................. 12, 13, 22

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F. 3d 1126 (9th Cir. 2000) ........................................................12

*Doctor's Assoc., Inc. v. Casarotto*,
  517 U.S. 681, 116 S.Ct. 1652 (1996)..................................................11

*Douglas v. Regions Bank*,
  757 F.3d 460 (5th Cir. 2014) ..............................................................21

*Ellsworth v. US Bank*,
  No. C 12-02506-LB (N.D. Cal. Sep. 19, 2012) ..................................21

*Global Client Solutions, LLC v. Ossello*,
2016 Mt. 50 ...........................................................................................18

*Gregory Ingalls v. Spotify USA, Inc.*,
No. 16-CV-03533-WHA (N.D. Cal. Nov. 14, 2016) .........................18

*Humana Inc. v. Forsyth*,
525 U.S. 299 (1999).............................................................................7

*McKnight v. Chicago Title Insurance Co., Inc.*,
358 F.3d 854 (11th Cir. 2004) .............................................................6

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
144 F. Supp. 3d 1069 (N.D. Cal. 2015) .............................................18

*Mediterranean Enterprises, Inc. v. Ssangyong*,
708 F.2d 1458 (9th Cir. 1983) ....................................... 12, 13, 14, 23

*Money Mailer, LLC v. Brewer*,
No. 15-1215, 2016 WL 1393492 (W.D. Wash. Apr. 8, 2016) ...........18

*Mortensen v. Bresnan Communications, LLC*,
722 F.3d 1151 (9th Cir. 2013) ...........................................................11

*Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co.*,
969 F.2d 931 (10th Cir. 1992) ...................................................... 6, 11

*National Home Ins. Co. v. King*,
291 F. Supp. 2d 518 (E.D. Ken. 2003) ................................................8

*Nitsch v. Dreamworks Animation SKG Inc.*,
No. 14-CV-04062-LHK (N.D. Cal. April 24, 2015) ..........................21

*Ojo v. Farmers Group, Inc.*,
600 F.3d 1201 (9th Cir. 2010) .............................................................7

*Oracle America, Inc. v. Myriad Group AG*,
724 F.3d 1069 (9th Cir. 2013) .................................................... 16, 17

*Organ v. Conner*,
  792 F. Supp. 693 (D. Alaska 1992) ....................................................9

*Qualcomm Inc. v. Nokia Corp.*,
  466 F.3d 1366 (Fed. Cir. 2006)........................................................21

*Romero v. Int'l Terminal Operating Co.*,
  358 U.S. 354 (1959)..........................................................................5

*SEC v. National Securities, Inc.*,
  393 U.S. 453 (1969)..........................................................................7

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ..........................................................12

*Standard Sec. Life Ins. Co. of New York v. West*,
  267 F.3d 821 (8th Cir. 2001) ............................................................6

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd on other grounds*,
  834 F.3d 1019 (2016).......................................................................20

*Tracer Research Corp. v. Nat. Environ. Services Co.*,
  42 F.3d 1292 (9th Cir. 1994) ........................................... 12, 13, 22, 23

*Triton Lines v. SS Mutual Underwriting Association*,
  707 F. Supp. 277 (S.D. Tex. 1989) ....................................................8

*Union Labor Life Ins. Co. v. Pireno*,
  458 U.S. 119, 102 S. Ct. 3002, 73 L.Ed.2d 647 (1982)................................. 8, 10

*United States v. Hutchins*,
  151 U.S. 542 (1894).......................................................................... 9, 10

*Vargas v. Delivery Outsourcing, LLC*,
  No. 15-03408, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ............................18

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
  348 U.S. 316 (1955)..........................................................................4

*Young v. Sec. Union Title Ins. Co.*,
  1998 MT 335, 292 Mont. 310, 971 P.2d 1233 ....................................................5

**Statutes**

9 U.S.C. § 1 *et seq* .............................................................................. *passim*

15 U.S.C. §§ 1011-1015 .........................................................................4

28 U.S.C. § 1292(b) ...............................................................................3

28 U.S.C. § 1332(a) ...............................................................................2

28 U.S.C. § 1333(1) ...............................................................................2

**Rule**

Fed. R. App. P. 5 ................................................................................ 2, 3

**Introduction**

Galilea's appeal is straightforward, and largely undisputed on both the facts and the law. The parties agree the Policy is governed by federal maritime law. D.E. 24 at 23-24. The parties further agree that, under federal maritime law, an arbitration provision is not enforceable if enforcement would violate a strong public policy of the forum state. D.E. 24 at 34-35. The Insurers do not dispute that the forum state is Montana. Montana has a strong public policy against enforcing arbitration provisions in insurance contracts. The Insurers attempt to dispute this, but fail to address clear Montana case law directly on point. While the Federal Arbitration Act would ordinarily preempt Montana's state law, that is not the case here. Instead, because the relevant state law regulates the business of insurance, Montana state law reverse preempts the FAA pursuant to the McCarran-Ferguson Act. The Insurers argue that Montana's state law does not regulate the business of insurance, but in doing so they fail to address the Supreme Court's three-part *Pireno* test. Instead, they cite a handful of wrongly-decided district court cases and ignore the correctly-decided appellate court cases which uniformly support Galilea's position.

Most of the Insurers' response is irrelevant to Galilea's argument. The Court should not be distracted by these red herrings. Instead, it should find that, in the narrow context of domestic maritime insurance policies, mandatory arbitration

1

provisions are not enforceable in forum states with strong public policies against enforcing such provisions. In doing so, the Court would be siding with four other Circuit Courts that have addressed the same question outside the maritime context.

The Insurers cross-appeal assumes the arbitration provision of the Policy is enforceable, and addresses the question of which of Galilea's twelve claims are subject to arbitration. Should the Court find that the arbitration provision in the Policy is unenforceable, it would not need to address the Insurers' cross-appeal. Should the Court reach the Insurers' cross-appeal, it should affirm the District Court decision that Galilea's Claims I-II are subject to arbitration, while its claims III-XII are not. These claims do not relate solely to the interpretation and performance of the Policy, and are thus not subject to arbitration under the narrow arbitration clause of the Policy.

### Jurisdictional Statement

There is no dispute regarding this Court's jurisdiction over either of the party's respective appeals. The insurers do not dispute that the District of Montana properly exercised diversity jurisdiction over the case below pursuant to 28 U.S.C. § 1332(a). D.E. 24 at 13. Further, the insurers agree that the District of Montana had admiralty or maritime jurisdiction over the case pursuant to 28 U.S.C. § 1333(1). *Id.* The parties agree that this Court has jurisdiction over both interlocutory cross-appeals pursuant to both Rule 5 of the Federal Rules of

Appellate Procedure and 28 U.S.C. § 1292(b). *Id*. Finally, the parties appear to concede that their respective cross-appeals were both timely perfected. *Id*.

### Disputed Facts and Additional Facts

The Insurers do not appear to dispute any of the material facts set forth by Galilea.[1] Instead, the Insurers proffer additional allegations of fact which they apparently believe bear on the merits of the parties' underlying dispute. These include allegations regarding prior insurance applications (D.E. 24 at 8), the actual application for insurance (*id*. at 8-10), the "cruising area" of the application for insurance and "navigational limits" of the policy (*id*. at 10), the location of the insured yacht prior to the accident (*id*. at 12-14), and the location of the insured yacht after the accident (*id*. at 14-15). Galilea disputes many of these allegations, but need not do so here because the Insurers' factual allegations are not relevant to a proper resolution of the parties' present dispute. These interlocutory cross-appeals address not the merits of Galilea's claims against the Insurers, but whether Galilea's claims must be submitted to arbitration. Similarly, the Insurers' allegations regarding their Petition to Compel Arbitration in the Southern District of New York are entirely irrelevant to the present appeal. D.E. 24 at 16-17. As the

---

[1] The Insurers dispute the location of the insured yacht during the insurance application process, and whether they were told of the yacht's location during the application process, but these disputes are not material to the present interlocutory appeal.

Insurers note, that Petition was dismissed without prejudice so this Court does not and could not have any jurisdiction over that non-final dismissal from a district court outside of this Court's appellate jurisdiction. *Id*.

### Argument

### I. <u>The Arbitration Provision is Unenforceable</u>

The parties agree that federal maritime law governs the parties' dispute because the Policy is a maritime insurance contract. The Insurers argue that the arbitration provision of the parties' maritime insurance contract is enforceable as a simple "maritime transaction" under the Federal Arbitration Act. 9 U.S.C. § 1 *et seq*. ("FAA"). But marine insurance contracts are treated differently than other "maritime transactions." This is because the McCarran-Ferguson Act, enacted 20 years after the FAA, exempts the business of insurance from most federal regulation. 15 U.S.C. §§ 1011-1015. This includes exempting the business of insurance from the FAA. Recognizing this, the Supreme Court has long held that the regulation of maritime insurance contracts rests with the states. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 316, 321 (1955)("We, like Congress, leave the regulation of maritime insurance where it has been – with the States."). The Supreme Court has even expressly held that "state laws governing the specific performance of arbitration agreements" have "been accepted as rules of decision in

admiralty cases." *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 373 (1959).

## A.    Enforcing the Arbitration Provision of the Policy Would Violate Montana's Strong Public Policy

The parties here agree that, under federal maritime law, an arbitration provision is not enforceable if enforcement would violate a strong public policy of the forum state. D.E. 24 at 34-35; *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Under *Bremen*, there is no need for this Court to conduct a multi-factor choice-of-law analysis, asking which state has the most significant contacts to the dispute. The Insurers do not and cannot dispute that the forum state under *Bremen* is Montana. Accordingly, the arbitration provision of the Policy is unenforceable if enforcement would contravene a strong public policy of Montana.

Montana has a strong public policy against enforcement of arbitration provisions in insurance policies, declared both by statute and by judicial decision. The Insurers attempt to dispute this by quoting only a part of Montana's statute and arguing that it is somehow vague. D.E. 24 at 35-36. But the statute is actually quite clear, and if there was any doubt, Montana's courts have clearly held that "arbitration agreements in insurance policies are invalid and unenforceable" under state law. *Young v. Sec. Union Title Ins. Co.*, 1998 MT 335, ¶ 29, 292 Mont. 310, 316, 971 P.2d 1233, 1236. There can be no serious dispute that enforcement of the

5

arbitration provision at issue here would contravene Montana's strong public policy, expressed in both statute and judicial decision, of protecting its citizens from arbitration provisions appearing in insurance contracts.

## B.     Montana's Statute is Not Preempted by the FAA

Every federal Circuit Court to consider whether state laws prohibiting arbitration provisions in insurance contracts are preempted by the FAA have found that they are not, and that the state laws instead "reverse preempt" the FAA under the McCarran-Ferguson Act. *See American Bankers Ins. Co. of Florida v. Inman*, 436 F.3d 490 (5th Cir. 2006) (Mississippi statute prohibiting arbitration clauses in insurance contracts not preempted by FAA because of McCarran-Ferguson Act); *Standard Sec. Life Ins. Co. of New York v. West*, 267 F.3d 821 (8th Cir. 2001) (FAA was reverse-preempted under McCarran-Ferguson Act by provision of Missouri Arbitration Act prohibiting arbitration clauses in insurance contracts); *Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931 (10th Cir. 1992) (Kansas statute excluding contracts of insurance from valid arbitration agreements not preempted by FAA); *McKnight v. Chicago Title Insurance Co., Inc.*, 358 F.3d 854 (11th Cir. 2004) (McCarran-Ferguson Act saves Georgia arbitration code prohibiting arbitration provisions in insurance contracts from FAA preemption). The Ninth Circuit should follow these well-reasoned cases and hold

6

that Montana's state law prohibiting arbitration provisions in insurance contracts reverse preempts the FAA.

Under the McCarran-Ferguson Act, "state law preempts a federal statute if: (1) the federal law does not specifically relate to insurance; (2) the state law is enacted for the purpose of regulating insurance; and (3) the application of federal law to the case might invalidate, impair, or supersede the state law." *Ojo v. Farmers Group, Inc.*, 600 F.3d 1201 (9th Cir. 2010)(citing *Humana Inc. v. Forsyth*, 525 U.S. 299, 306-307 (1999)). Here, the Insurers do not dispute part (1) of this test, that the FAA does not specifically relate to insurance. Nor do they dispute part (3), that application of the FAA to enforce the arbitration provision of the Policy would "invalidate, impair or supersede" Montana's statute prohibiting arbitration provisions in insurance policies. The Insurers do, however, appear to dispute whether Montana's statute was "enacted for the purpose of regulating insurance."

The Supreme Court has explained that "[s]tatutes aimed at protecting or regulating" the relationship between the insurance company and the policyholder, whether "directly or indirectly, are laws regulating the business of insurance." *SEC v. National Securities, Inc.*, 393 U.S. 453, 460 (1969). The Supreme Court has further articulated three factors a court must consider in evaluating whether a state law regulates the business of insurance: (1) "whether the practice in question has the effect of transferring or spreading a policyholder's risk;" (2) "whether the

practice is an integral part of the policy relationship between the insurer and the insured;" and (3) "whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S. Ct. 3002, 73 L.Ed.2d 647 (1982). In its Opening Brief, Galilea explained how Montana's statute prohibiting arbitration provisions in insurance contracts directly regulates the relationship between insurance company and policyholder and is thus a law regulating the business of insurance. Galilea further explained how Montana's statute satisfies all three parts of the *Pireno* test, and cited the four Circuit Court cases that have unanimously held that analogous state laws prohibiting arbitration clauses in insurance contracts "regulate the business of insurance" and thus reverse preempt the FAA.

In response, the Insurers do not even mention the *Pireno* test, much less discuss any of its three parts. Nor do they address any of the Circuit Court cases cited by Galilea. Instead, the Insurers cite *Triton Lines v. SS Mutual Underwriting Association*, 707 F. Supp. 277 (S.D. Tex. 1989), which also ignored the *Pireno* test. *Id.* at 279. Because it did not address *Pireno*, the *Triton* case has rightly been criticized as "involv[ing] such limited analysis as to be unpersuasive." *National Home Ins. Co. v. King*, 291 F. Supp. 2d 518, 529 (E.D. Ken. 2003). More importantly, *Triton* has been overruled by *American Bankers Ins. Co. of Florida v. Inman*, 436 F.3d 490 (5th Cir. 2006), where the Fifth Circuit affirmed a district

court's denial of a motion to compel arbitration because a Mississippi statute

prohibiting arbitration clauses in certain insurance contracts was not preempted by

the FAA due to the McCarran-Ferguson Act. The Insurers also cite *Basargin v.*

*Shipowners' Mut. Protection and Indem. Ass'n (Luxembourg)*, 1995 A.M.C. 1463,

1469 (D. Alaska Feb. 16, 1995), but concede that Alaska's statutes do not prohibit

arbitration provisions in insurance contracts. D.E. 24 at 30. Another case cited by

the Insurers confirms that "Alaska law is not hostile towards arbitration." *Organ v.*

*Conner*, 792 F. Supp. 693, 697 (D. Alaska 1992). These Alaska cases are thus

irrelevant.

The Insurers next cite a series of cases decided under the New York Convention

because they involved international arbitration agreements. D.E. 24 at 30-32. The

Insurers argue that the insured yacht "Galilea" could be considered "property

located abroad," and thus the Policy could be found enforceable because the

McCarran Ferguson Act does not reverse preempt the New York Convention. D.E.

24 at 32-33. This argument is not only presented for the first time on appeal, and

even then only in the alternative, it is simply not correct. The Supreme Court

defined the word "abroad" in *United States v. Hutchins,* 151 U.S. 542, (1894), in

the context of a statute governing travel expenses for naval officers. *Id.* at 544. It

held a naval officer who traveled by steamer from San Francisco to New York via

the Panama Canal did not travel abroad because "the question whether travel is

abroad or within the United States should be determined by the termini of the journey, rather than by the route actually taken." *Id*. Here, regardless of the route actually taken, there is no dispute that the intended termini of the Galilea's journey was to be San Diego, California (ER 173). As in *Hutchins*, the Galilea's domestic termini rendered its journey domestic, even though the intended path of travel proceeded through the Panama Canal.

The Insurers next cite *Bixler v. Next Fin. Grp., Inc.*, 858 F. Supp. 2d 1136, 1146-47 (D. Mont. 2012), a case previously addressed in Galilea's Opening Brief. In *Bixler*, the district court found that Texas law applied, and further found that the arbitration agreement in question did not pertain to an annuity contract and thus did not even implicate Montana's statutory prohibition of arbitration agreements in insurance policies. 858 F.Supp.2d at 1146. Galilea thus properly described the remainder of the decision as *dicta*. The district court went on to say, in *dicta*, that Montana's statute would be preempted by the FAA and thus "would have no application to the motion to compel arbitration even were Montana law applied." Id. at 1147. But the district court's reasoning for this *dicta* was that the relevant Montana statute was found in Montana's Uniform Arbitration Act, and not in the Montana Insurance Code. *Id.* at 1146. As Galilea previously argued, under the *Pireno* test the title of the code chapter where the state statute appears is entirely irrelevant.  The Tenth Circuit has expressly rejected this argument as irrelevant,

10

and this Court should do the same. *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931 (10th Cir. 1992) ("The application of the Kansas statute here concerned to insurance as an exception is clear and direct although included in an act relating basically to arbitration."). The Insurers quote from *Bixler* extensively but do not address this deficiency in its reasoning, even though Galilea identified the problem in its Opening Brief.

Nor is the Insurers' citation to *Doctor's Assoc., Inc. v. Casarotto* helpful. 517 U.S. 681, 686-87, 116 S.Ct. 1652 (1996). There, the Supreme Court invalidated a provision of Montana's law providing special notice requirements for any arbitration provision, not just arbitration provisions in insurance policies. *Id*. This portion of the statute plainly was not directed to "the business of insurance," as required to qualify for reverse preemption under the McCarran Ferguson Act. The citation to *Mortensen v. Bresnan Communications, LLC* is similarly unavailing. 722 F.3d 1151 (9th Cir. 2013). That case did not involve maritime law, which expressly defers to the public policy of the forum state, and did not involve the business of insurance, so the McCarran Ferguson Act could not enable Montana state law to reverse preempt the FAA.

This Court should find that, in the narrow context of domestic maritime insurance policies, mandatory arbitration provisions are not enforceable in forum states with strong public policies against enforcing such provisions. In this narrow

context, the McCarran Ferguson Act allows state law to reverse preempt the FAA and its otherwise strong policy in favor of enforcing arbitration agreements. If the Court agrees, it can reverse the district court's opinion and find the arbitration provision of the Policy unenforceable. It can also decline to address the Insurers' cross-appeal, which is directed only to the proper scope of the parties' arbitration agreement.

## II.  The Insurers' Cross-Appeal Should Be Rejected

Should it reach the Insurers' cross-appeal, this Court should affirm the District Court's decision that at least Galilea's claims III-XII are not subject to mandatory arbitration. The arbitration clause at issue here covers "any and all disputes *arising under* this policy" (ER 230) (emphasis added). The Ninth Circuit has repeatedly held that "the phrase 'arising under' in an arbitration agreement should be interpreted narrowly." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921 (9th Cir. 2011) (*citing Mediterranean Enterprises, Inc. v. Ssangyong*, 708 F.2d 1458 (9th Cir. 1983) and *Tracer Research Corp. v. Nat. Environ. Services Co.*, 42 F.3d 1292 (9th Cir. 1994). This stands in stark contrast to arbitration provisions with language such as "arising out of or relating to" which are interpreted as "broad and far reaching." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F. 3d 1126, 1131 (9th Cir. 2000); *see also Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999) (language "arising in connection with" is broad

and "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their genesis or origin in the contract"). In *Mediterranean*, the Ninth Circuit long ago held that "arising under" covers a narrow scope of disputes, specifically "only those relating to the interpretation and performance of the contract itself." *Mediterranean*, 708 F.2d at 1464. The Court went on to hold that claims for breach of contract and breach of fiduciary duty created by the same contract fell within the scope of the "arising under" arbitration clause and were properly sent to arbitration. *Id*. On the other hand, a claim for conspiracy to induce a breach of contract, a claim for *quantum meruit* on an implied contract or quasi-contract theory, and a claim for conversion did not fall within the scope of the arbitration clause and were thus not arbitrable. *Id*. at 1464-65. In *Tracer*, the Ninth Circuit held that narrow arbitration clauses do not cover tort claims, even if those tort claims would not have arisen 'but for' the contract. 42 F.3d at 1295. Under a narrow arbitration clause, a claim which states "an independent wrong from any breach" of contract "is not arbitrable." *Id*. The Court recently reaffirmed this holding in *Cape Flattery Ltd.*, finding that tort claims are not arbitrable under an "arising under" arbitration clause. 647 F.3d at 924.

The District Court here correctly found that the arbitration provision of the Policy is narrow, as it contained "arising under" language that has long been interpreted narrowly in the Ninth Circuit. The Insurers do not dispute this. Further,

13

Galilea's claims for promissory estoppel (Count IV) and equitable estoppel (Count V) are entirely distinct from the policy, and do not "relate to the interpretation and performance of the contract itself." Similarly, Galilea's claim for breach of the implied covenant of good faith and fair dealing (Count VI) and its claim for contract reformation (Count III) are founded on implied contract theories, just like the *quantum meruit* claim in *Mediterranean* which was found not arbitrable. 708 F.2d at 1464. Galilea's remaining claims are all tort claims, including its claims for negligent misrepresentation (Count IX), constructive fraud (Count X), breach of fiduciary duty (Count VII), tortious interference with contract (Count XI), tortious interference with prospective economic advantage (Count XII), and even its claim for violation of the Montana Unfair Trade Practices Act (Count VIII). The District Court correctly concluded that these tort claims clearly fall outside the scope of the narrow "arising under" arbitration clause at issue here, and are thus not covered by the narrow arbitration clause contained in the policy. Surprisingly, the Insurers' Brief does not dispute the District Court's conclusion, and in fact entirely fails to address the arbitrability of Galilea's individual claims.

## A.     The District Court Correctly Found the Arbitration Agreement Narrow

The Insurers do not dispute that the arbitration provision of the Policy is narrow, and offer nothing to dispute that Galilea's claims III-XII fall outside the narrow scope of the arbitration provision of the Policy. D.E. 24 at 45-47. Their

14

appeal here is first based on the flawed premise that the District Court should have considered a separate, distinct arbitration provision contained not in the Policy, but in the application for insurance. This argument is incorrect for several reasons.

First, the arbitration the Insurers initiated with the AAA, and which the Insurers asked the District Court to compel, was based solely on the arbitration provision of the Policy, and not on any provision of the application for insurance (ER 46-48). The District Court correctly noted that only the arbitration provision of the Policy was before it, and therefore correctly considered only the arbitration clause of the Policy (ER 10). The Insurers offer no argument as to why the District Court's conclusion should be rejected.

Further, the application for insurance is not supported by consideration required to create an enforceable agreement. Galilea received nothing in exchange for submitting the application, which expressly "does not bind the Insurance Company to effect insurance" and could be rejected at Pantaenius' or the Insurers' sole discretion (ER 165). Further, the Policy itself not only supersedes the application, but expressly excludes the application from being incorporated into the parties' insurance agreement (ER 226). The Policy itself states that the "Terms and Conditions, declaration sheets, endorsements, express warranties, deductibles and any other written amendments together form the terms and conditions of the *entire* insurance policy." *Id*. (emphasis added).  The application for insurance is thus

expressly excluded from becoming part of the parties' insurance contract. Nor is it possible to enforce both the arbitration provision of the application and the arbitration provision of the Policy, as they are materially different. Not only does the arbitration provision of the application for insurance include a broader scope of arbitration, it makes no reference to federal maritime law, specifically references the AAA's Commercial Arbitration Rules, and states that only one arbitrator will hear the dispute (ER 171). Any attempt to read the arbitration provision of the Policy together with the conflicting arbitration provision of the application of insurance would render both insolubly ambiguous and therefore unenforceable. The Insurers here chose to institute arbitration before three AAA arbitrators solely under the arbitration provision of the Policy, asked the District Court to compel Galilea to participate in that specific arbitration, and should not be permitted to change their minds now. The arbitration provision of the application for insurance is not relevant and should be ignored.

## B.     The District Court Was Required to Consider Arbitrability

The Insurers also argue that the District Court improperly considered the question of whether Galilea's claims were arbitrable. "There is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle America, Inc. v. Myriad Group AG*, 724 F.3d 1069, 1072 (9th Cir. 2013).  The Insurers argue

this presumption is overcome here because the arbitration clause references AAA arbitration rules, which constitute a "clear and unmistakable" delegation of questions of arbitrability to the arbitrator. D.E. 24 at 42-44. The Insurer's argument is wrong for three reasons.

First, the Insurers again incorrectly rely on the application for insurance and not the Policy. *See* D.E. 24 at 44 ("Taking account of the signed Application, and the clear and unmistakable evidence that AAA rules are incorporated into the arbitration clause that was acknowledged as being "read and understood,"…). The Insurers have offered no argument regarding the only relevant arbitration provision, that contained in the Policy. This Court should reject the Insurers' argument as being directed to the wrong document.

Second, the Ninth Circuit has never held that a generic designation of AAA rules constitutes "clear and unmistakable" evidence of delegation in the context of a non-negotiable consumer contract, or in any contract involving disparities in the sophistication of the parties, such as the insurance policy at issue here. *See, e.g., Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (2015) (limiting its holding to the specific facts of the case, and declining to decide the effect of incorporating AAA rules into contracts involving unsophisticated parties); *Oracle*, 724 F.3d at fn. 2 ("We express no view as to the effect of incorporating arbitration rules into

consumer contracts.").  Since *Brennan*, every district court in the Ninth Circuit to have considered the issue has declined to hold that incorporation of AAA rules unmistakably delegates arbitrability in contracts involving at least one unsophisticated party. *Gregory Ingalls v. Spotify USA, Inc.*, No. 16-CV-03533-WHA at * (N.D. Cal. Nov. 14, 2016)("Every district court decision in our circuit to address the question since *Brennan* has held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party.")(citing *Money Mailer, LLC v. Brewer,* No. 15-1215, 2016 WL 1393492, at *2 (W.D. Wash. Apr. 8, 2016) (Judge Rober S. Lasnik); *Vargas v. Delivery Outsourcing, LLC,* No. 15-03408, 2016 WL 946112, at *8 (N.D. Cal. Mar. 14, 2016) (Judge Jon S. Tigar); *Aviles v. Quik Pick Express, LLC,* No. 15-5214, 2015 WL 9810998, at *6 (C.D. Cal. Dec. 3, 2015) (Judge Michael W. Fitzgerald); *Meadows v. Dickey's Barbecue Restaurants Inc.,* 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) (Judge Jon S. Tigar)). Similarly, the Montana Supreme Court recently declined to extend the *Brennan* rule to a non-negotiable consumer contract. *Global Client Solutions, LLC v. Ossello*, 2016 Mt. 50.

As in those cases, the policy at issue here is indisputably a pre-printed, non-negotiable contract of insurance. The Insurers argue that the Policy is a commercial and not a consumer contract because Galilea, LLC is the named insured while the Kittlers were individually identified as beneficial owners of the insured yacht. (ER

90; ER 227, section A3 (defining "insureds" to include beneficial owners)) (listing

Chris and Taunia Kittler as "Beneficial Owners"). This argument finds no support

in the law, and is belied by the terms of the insurance policy itself, which expressly

excludes coverage for commercial use of the insured vessel (ER 228, § A6(a)). An

insurance policy which expressly excludes commercial uses of the insured vessel

cannot reasonably be called a commercial policy of insurance. Even if it were

somehow deemed commercial, the Insurers do not dispute the District Court's

finding that Galilea and its members were "unsophisticated," and "would likely not

understand that a reference to the AAA rules would delegate the determination of

arbitrability to the arbitrator" (ER 6-7). Nor do they dispute the District Court's

finding that "[a]n individual not well-versed in arbitration law is unlikely to be

aware that the AAA arbitration rules provide for the arbitrator to determine his

own jurisdiction." *Id*. Under these circumstances, and given the presumption in

favor of Courts deciding arbitrability and that all doubts are resolved against

delegation, the District Court correctly determined which claims come within the

scope of the arbitration clause.

Third, even if this Court were to expand the holding of *Brennan* to the

context of a pre-printed contract involving an unsophisticated party, the Court

should still find that ambiguities in the arbitration clause here prevent finding a

clear and unmistakable delegation of the question of arbitrability. Here, as in

*Tompkins*, the arbitration clause of the Policy is ambiguous regarding which of the numerous AAA rules supposedly apply. *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 at *10 (N.D. Cal. June 25, 2014), *aff'd on other grounds*, 834 F.3d 1019 (2016); *see also Global Client Solutions*, 2016 MT 50 at ¶ 32 (agreement ambiguous in that it did not "specify which of the multiple sets of commercial or consumer AAA rules are supposedly incorporated here."). The AAA's website lists over 50 different active sets of AAA arbitration rules,[2] and while the record contains delegation provisions from the current AAA Commercial Arbitration Rules, it does not contain any of the various AAA rules which may have been available when the parties' agreement was entered in May 2015. A generic designation of "the Rules of the American Arbitration Association" does not specify which of the AAA's numerous sets of rules might apply, and – particularly on this record – cannot unambiguously constitute a delegation of decisions regarding arbitrability to the arbitrator.

Finally, even if this Court were to find that the parties clearly and unmistakably intended to delegate arbitrability decisions to an arbitrator, that would not end the inquiry. Instead, the Court would still need to conduct at least a limited inquiry to determine whether the Insurers' assertions of arbitrability are

---

[2] See
http://www.adr.org/aaa/faces/rules/searchrules/rulesearchresult?x_rule_status=A, last visited January 25, 2017.

"wholly groundless." *Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1371 (Fed.

Cir. 2006) (applying Ninth Circuit law); *ASUS Compuer Int'l v. InterDigital, Inc.*,

No. 15-CV-01716-BLF (N.D. Cal. Sep. 4, 2015) (even under broad arbitration

clause, assertion that particular cause of action for breach of contract fell within

scope was wholly groundless); *Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-

CV-04062-LHK (N.D. Cal. April 24, 2015)(even broad arbitration clause does not

cover certain of plaintiff's claims, and any argument to the contrary would be

wholly groundless); *Ellsworth v. US Bank*, No. C 12-02506-LB (N.D. Cal. Sep. 19,

2012)(assertion that claims fell within scope of arbitration provision was wholly

groundless). To do so, the Court must "look to the scope of the arbitration clause

and the precise issues that the moving party asserts are subject to arbitration."

*Qualcomm*, 466 F.3d at 1371. This limited inquiry prevents a party from asserting

the arbitrability of "any claim at all, no matter how divorced from the parties'

agreement to force arbitration." *Id*. at 1373, fn.5. "If it were otherwise, then every

case involving an arbitration agreement with a delegation provision must, with no

exceptions, be submitted for such gateway arbitration; no matter how untenable the

argument that there is some connection between the dispute and the agreement, an

arbitrator must decide first." *Douglas v. Regions Bank*, 757 F.3d 460, 463 (5th Cir.

2014). The "wholly groundless" inquiry is designed to prevent this result.

Here, the District Court correctly found that Galilea's claims III-XII did not fall within the narrow scope of the arbitration clause contained in the Policy (ER 9). Surprisingly, the Insurers appear to have skipped the "wholly groundless" inquiry, and have not addressed how or why they contend the precise issues of ten of Galilea's causes of action relate solely to the performance of the policy and therefore fall within the narrow scope of the Policy's arbitration provision. In fact, they have offered no argument as to why the District Court's findings regarding the nature of Galilea's claims should be disturbed. Nor should they be permitted to do so for the first time in their Fourth Brief on Cross-Appeal. The Insurers have thus waived their right to argue that Galilea's claims fall within the scope of the narrow arbitration clause, or that their assertions of arbitrability are not "wholly groundless."

Even if the Insurers had not waived this argument, and the Court were to substantively evaluate the Insurers' as-yet unarticulated position, it should still find their assertions of arbitrability "wholly groundless." As discussed more fully above, any assertion that Galilea's claims III-XII (*i.e.*, all claims other than the breach of contract claims) fall within the scope of the narrow arbitration clause is "wholly groundless" and must be rejected. *See Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921 (9th Cir. 2011)(narrow arbitration provisions do not cover tort claims); *Tracer Research Corp. v. Nat. Environ. Services Co.*, 42

F.3d 1292 (9th Cir. 1994)(same); *Mediterranean Enterprises, Inc. v. Ssangyong*, 708 F.2d 1458 (9th Cir. 1983)(claims for *quantum meruit* and conversion outside narrow scope of arbitration clause). The Insurers do not argue otherwise, making the limited "wholly groundless" inquiry very simple in this case. There is no basis for referring Galilea's claims III-XII to an arbitrator.

### Conclusion

For all of the above and foregoing reasons, the Court should vacate the district court's order finding the arbitration provision in the Policy enforceable, hold that the arbitration provision in question is unenforceable as contravening a strong public policy of the forum state, and remand this case to the district court for resolution of all twelve of Galilea, LLC's claims against the Insurers.

Respectfully submitted,

/s/ Joseph J. Gleason_____
Joseph J. Gleason
GLEASON LAW, LLC
780 Morosgo Drive
Suite 14084
Atlanta, GA 30324
(404) 594-3550
joe@gleason.legal

Ross D. Tillman
BOONE KARLBERG P.C.
201 W. Main Street, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
(406) 543-6646
Fax: (406) 549-6804
rtillman@boonekarlberg.com
*Counsel for Plaintiff-Appellant/Cross-
Appellee Galilea, LLC*

**STATEMENT OF RELATED CASES**

Pursuant to Circuit Rule 28-2.6, Galilea, LLC states that the appeal of *Technical Security Integration v. Philadelphia Indemnity Insurance Company*, Case Number 15-35683, currently pending before this Court, may raise a closely related issue. Specifically, that appeal appears to involve whether a Washington statute prohibiting arbitration provisions in insurance contracts is preempted by the FAA or saved by the McCarran-Ferguson Act in the context of a non-maritime insurance contract. Galilea, LLC is aware of no other related cases pending in this Court.

**CERTIFICATION OF COMPLIANCE**

This brief complies with the type-volume limitations of Fed. R. App. P.

32(a)(7)(B) because it contains 5,691 words, as counted by Microsoft Word.

Further, this brief complies with the typeface requirements of Fed. R App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using MS-Word in 14-

point Times New Roman font.

January 25, 2017                    By: /s/ Joseph J. Gleason

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on January 25, 2017; I also served it upon the following

CM/ECF participant:

Brian Eisenhower
Gerard W. White
Hill Rivkins LLP
45 Broadway
Suite 1500
New York, NY 10006
(212) 669-0600
beisenhower@hillrivkins.com
gwhite@hillrivkins.com

Gerry Fagan
Moulton Bellingham PC
27 N. 27th Street
Suite 1900
Billings, MT 59101
(406) 248-7731
Gerry.Fagan@moultonbellingham.com


By: /s/ Joseph J. Gleason_____